There is a basis in the record, therefore, to conclude that Truman's cooperation extended beyond the garden variety acceptance of responsibility and thus was either not taken into account by the Guidelines or was accounted for in the Guidelines but was present in this case to an exceptional degree. That is not a determination which we ought to make in the first instance, however. *See United States v. Orlando*, 281 F.3d 586, 601 (6th Cir. 2002) (holding that sentencing discretion is vested in district court which must make fact findings and establish a record for review).

### III.

It is the district court in which the authority is vested to calculate the correct Guideline Range and determine the appropriate sentence in criminal cases in the exercise of its sound discretion. *See United States v. Rodgers*, 278 F.3d 599, 602-03 (6th Cir. 2002). A district court's refusal to depart downward because it misapprehends its authority, however, requires that the sentence be redetermined in full recognition of the discretion which the law confers on sentencing courts. Because the lower court erroneously concluded that it lacked discretion to consider the defendant's asserted grounds for a downward departure absent a motion from the government, we **VACATE** the sentence and **REMAND** the matter to the district court for resentencing.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0293P (6th Cir.)
File Name: 02a0293p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

*v.*

              No. 01-5072

SVEN P. TRUMAN,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 00-00042—Edward H. Johnstone,
Senior District Judge.

Argued: April 24, 2002

Decided and Filed: August 29, 2002

Before: KRUPANSKY and BOGGS, Circuit Judges;
LAWSON, District Judge.[*]

———————

### COUNSEL

**ARGUED:** Scott C. Byrd, OLGIN & BYRD, Louisville, Kentucky, for Appellant. Erwin Roberts, ASSISTANT

———————

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Scott C. Byrd, Dennis Olgin, OLGIN & BYRD, Louisville, Kentucky, for Appellant. Erwin Roberts, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

DAVID M. LAWSON, District Judge. In this case we are called upon to determine the extent of a sentencing judge's discretion to depart from a prescribed Sentencing Guideline Range due to assistance offered by a defendant which did not result in the investigation or prosecution of another individual. The sentencing judge in this case held that U.S. Sentencing Guideline Manual (U.S.S.G.) § 5K1.1 applied in such a case and that, absent a motion from the government to depart, he lacked the discretion to do so. We hold that the grounds argued by the defendant as justification for departure fell outside the plain language of § 5K1.1, are governed by § 5K2.0, and permitted the sentencing court to exercise its discretion to depart without a motion from the government. We therefore vacate the judgment of sentence and remand for resentencing.

### I.

On February 23, 2000, the defendant, Sven Truman, sold 8,224 tablets of hydromorphone and methadone, both of which are Schedule II controlled substances, to an undercover officer. Truman was arrested the next day and interrogated by Drug Enforcement Agency (DEA) investigators. He initially lied about the manner in which he procured the pills, claiming that he had purchased them from a man in a bar. When the agents expressed incredulity at Truman's story, he responded, "All right, I'll come clean."

Truman confessed that when he had worked at Roxanne Laboratories (Roxanne) as a machinist, he had stolen the

not already take it into account. [3] If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. [4] If a factor is unmentioned in the guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland.

*Koon v. United States*, 518 U.S. 81, 95-96 (1996).

Truman argues that his cooperation provided an extraordinary opportunity to the government and his former employer to learn how its security measures were inadequate and could easily be defeated. That significant improvements resulted from the defendant's revelations, he argues, demonstrates his substantial assistance which the Guidelines encourage and which otherwise were not taken into account in the Guideline scoring. The government contends that Truman's statements to authorities were nothing more than an acceptance of his responsibility for his own conduct which, although constituting an encouraged factor, were already taken into account when the offense level was reduced pursuant to U.S.S.G. § 3E1.1(a) & (b).

An acceptance of responsibility adjustment is generally awarded to a defendant who admits guilt at a timely-entered guilty plea proceeding and may not be disallowed unless there is conduct clearly demonstrated in the record that is inconsistent with the defendant's specific acknowledgment of responsibility demonstrated by the guilty plea. *See* U.S.S.G. § 3E1.1, cmt. n.3; *United States v. Tilford*, 224 F.3d 865, 868 (6th Cir. 2000). In this case, the sentencing judge appears to have been impressed with the extent of Truman's cooperation when he found the information he provided significant and commented that he "believe[d] you granted all the assistance that you could to the state and federal authorities." J.A. at 51.

United States Attorney has not requested a downward departure." *Id*. at 19.

We hold, therefore, that when a defendant moves for a downward departure on the basis of cooperation or assistance to government authorities which does not involve the investigation or prosecution of another person, U.S.S.G. § 5K1.1 does not apply and the sentencing court is not precluded from considering the defendant's arguments solely because the government has not made a motion to depart.

The question remains, however, as to whether the sentencing court's discretion to depart downward is properly invoked in such circumstances under U.S.S.G. § 2K2.0. That Guideline Section provides in part:

> Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." . . . [T]he court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range (*e.g.,* as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive.

U.S.S.G. § 5K2.0.

Although the Guidelines "place essentially no limit on the number of potential factors that may warrant departures," the Supreme Court has identified four rules for applying § 5K2.0:

> [1] If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure.
> [2] If the special factor is an encouraged factor, the court is authorized to depart if the applicable guideline does

---

tablets by secreting them in his sock. Truman explained that surveillance procedures at Roxanne were minimal, particularly in the areas where the tablets were manufactured. When asked if he had any other controlled substances, Truman replied that he had 500 methadone tablets, 750 to 1000 morphine tablets and 3000 hydromorphone tablets in an "ALDI" bag in the trunk of his car in Ohio. After obtaining Truman's consent, officers searched Truman's automobile and found 14,172 tablets of hydromorphone, 2,852 tablets of morphine and 1,214 tablets of methadone in the car's trunk.

On March 14, 2000, two other Diversion Investigators with the DEA interviewed Truman at length about how he was able to defeat Roxanne's security procedures. As the government has conceded before this Court, Truman explained in detail how he removed the tablets and described the lax security procedures at Roxanne. Truman maintained that he acted alone.

On May 8, 2000, Truman pleaded guilty to possession with intent to distribute hydromorphone, methadone and morphine in violation of 21 U.S.C. § 841(a)(1) pursuant to a written Rule 11 plea agreement. In the plea agreement, Truman agreed that the government may transfer information about the case to other federal and state law enforcement agencies and he consented to the entry of an order authorizing the release of grand jury information under Fed. R. Crim. P. 6(e). The government agreed to recommend a sentence "at the lowest end of the applicable Guideline Range," subject to any statutory mandatory minimum sentence, but did not promise to seek a downward departure for substantial assistance under § 5K1.1.

On June 3, 2000, DEA investigators conducted a security investigation at Roxanne and met with Peter Dickinson, vice president of operations. Relying on Truman's statements during their March interview of him, the DEA investigators uncovered numerous security lapses at Roxanne and subsequently furnished a report to Dickinson. On August 18, 2000, Dickinson described to the investigators various

security upgrades that Roxanne had implemented as a result of their report.

Thereafter, the district court conducted two hearings to determine the length of Truman's sentence. The court held that the applicable Guideline Range was 121 to 151 months, finding that Truman merited a three-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) & (b), as recommended by the probation officer. At both hearings, Truman moved for a downward departure pursuant to U.S.S.G. § 5K2.0, which permits departures for, *inter alia*, circumstances not contemplated by the Sentencing Commission in formulating the Guidelines. Truman highlighted his significant cooperation with the DEA investigators in their effort to upgrade Roxanne's security procedures as grounds for departure.

At the first hearing conducted on December 11, 2000, a DEA investigator testified that Truman was cooperative and that "he didn't hold back on us. He admitted to his part in it and cooperated in terms of telling us where additional drugs were located up in Columbus that he had possession of." J.A. at 56. However, the investigator rejected the thesis put forth by Truman's counsel that Truman's help was essential to uncovering the security lapses at Roxanne.

At the January 9, 2001 hearing, the district court remarked that Truman's help appeared essential:

> Now, the government agents after it's over said, "Oh, we would have found that anyway." And that's the good thing to say. We're bright people, we would have found it as soon as we knew the name, but that's easy to say before the fact and after they have the information.

J.A. at 49. Nevertheless, the district court rejected Truman's motion to depart downward under § 5K2.0, concluding that "I do not believe I have the authority to reduce [Truman's sentence] under [§ 5K2.0]. I do not have the authority. So if I do not have the authority, that is now an appealable issue." J.A. at 49. The court clarified its understanding that it lacked

seating the authority for exercising sentencing discretion where it traditionally has been found: with the sentencing judge. The language of the statute and the Guideline Section reflects a narrow limitation on the exercise of judicial sentencing discretion confined to a specific circumstance, and there is no historical or policy reason to read the language more broadly than its terms suggest. Thus, where the information shared by the defendant with authorities involves exposing security breaches or revealing *modus operandi* that can be frustrated by prophylactic measures to prevent crime, there is no good reason, and the Guideline language suggests none, to condition the exercise of judicial discretion on a government motion.

Other courts have recognized this distinction and have observed that when the defendant's cooperation does not involve investigation or prosecuting another person, the government's power to limit the court's exercise of discretion to depart downward does not apply. For instance, in *United States v. Khan*, 920 F.2d 1100 (2d Cir. 1990), the court stated that the defendant's activity in protecting the safety of a confidential informant is the sort of substantial assistance that the sentencing court could consider absent a government motion, since an exception to § 5K1.1's motion requirement exists "where the defendant offers information regarding actions he took, which could not be used by the government to prosecute other individuals." *Id*. at 1107. Similarly, in *United States v. Sanchez*, 927 F.2d 1092 (9th Cir. 1991), the court concluded that information provided to assist the government in a civil forfeiture proceeding was outside § 5K1.1's scope because "by its plain language, Section 5K1.1 applies only to assistance provided in the investigation or prosecution of another person." *Id*. at 1094. In *United States v. Stoffberg*, 782 F. Supp. 17 (E.D.N.Y. 1992), the district court concluded that it could consider the defendant's cooperation with a Congressional Committee as a basis to depart downward absent a government motion since "[t]he courts have sentencing authority to reward cooperation of a defendant with an agency other than the prosecution when the

U.S.S.G. § 5K1.1 (emphasis added). Application Note 2 in the Commentary distinguishes between the concepts of substantial assistance and acceptance of responsibility, noting:

> The sentencing reduction for assistance to authorities shall be considered independently of any reduction for acceptance of responsibility. Substantial assistance is directed *to the investigation and prosecution of criminal activities by persons other than the defendant*, while acceptance of responsibility is directed to the defendant's affirmative recognition for his own conduct.

U.S.S.G. § 5K1.1, cmt. n.1 (emphasis added).

Thus, by its terms, § 5K1.1 applies only to substantial assistance in connection with "the investigation and prosecution of another individual who has committed a crime." Where the "substantial assistance" is directed other than toward the prosecution of another person, the limitation of § 5K1.1 — i.e., the requirement of a government motion as a triggering mechanism — does not apply.

There are several compelling reasons for requiring a government motion when the substantial assistance involves the prosecution of another. First, the government is in the best position to evaluate the cooperation of a defendant in light of its own investigation. Second, the government may have a need to retain the coercive power inherent in the control of the triggering mechanism in order to achieve the goal of prosecuting another. The government may need to compel the testimony of a cooperating individual before the grand jury or at trial. Third, the government is best able to gauge the appropriate timing of such a motion in light of its trial needs in the prosecution of others. The natural reluctance of individuals to testify against another for a variety of reasons justifies reposing in the government the exclusive gate-keeping authority over the triggering mechanism of § 5K1.1.

Where cooperation does not involve the prosecution of another, these justifications dissipate and militate in favor of

authority to entertain Truman's downward departure motion by noting that it believed its discretion could only be triggered by a government motion. The court said, "I believe you granted all the assistance that you could to the state and federal authorities. I have found, however, that I have no power to make these motions for them. It's up to them. If you say they didn't, there's nothing I could do to overcome that." J.A. at 51.

The district court then sentenced Truman to 121 months in prison and 3 years of supervised release. On January 16, 2001, Truman timely filed his notice of appeal.

II.

Although the application of the Sentencing Guidelines to a particular set of facts is a question of law to be reviewed *de novo*, *United States v. Morrison*, 983 F.2d 730, 732 (6th Cir. 1993), we do not ordinarily review a district court's discretionary decision not to depart downward from the Guidelines Range. *See United States v. Harris*, 237 F.3d 585, 590-91 (6th Cir. 2001) (appellate court without the authority to review district court's refusal to depart downward under § 5K2.0 for the defendant's "earnest efforts to cooperate with the authorities" because this decision was a matter of discretion). However, we will vacate a sentence where the district court erroneously believed that it lacked any authority to depart downward as a matter of law. *See United States v. Landers*, 39 F.3d 643, 649 (6th Cir. 1994). Because the question of whether discretion exists at all is purely a question of law, we review a district court's determination that it lacked authority to depart downward *de novo*. *See United States v. Thomas*, 49 F.3d 253, 260 (6th Cir. 1995).

The government contends that the sentencing court correctly concluded that it lacked discretion to depart downward since the basis of the defendant's request was his substantial assistance to authorities, and all substantial assistance motions are governed by U.S.S.G. § 5K1.1. The government correctly notes our holding that, according to Supreme Court precedent, "a district court may only consider

a substantial assistance departure upon government motion." *See United States v. Moore*, 225 F.3d 637, 644 (6th Cir. 2000). Our decision in *Moore* relied on the Supreme Court's decision in *Wade v. United States*, 504 U.S. 181 (1992). However, in *Wade*, the defendant conceded, "as a matter of statutory interpretation, that [18 U.S.C.] § 3553(e) imposes the condition of a Government motion upon the district court's authority to depart, . . . and he does not argue otherwise with respect to § 5K1.1." *Id*. at 185.

The defendant counters with the argument that § 5K1.1 is not the exclusive provision for dealing with all cooperation, but rather the court may consider a defendant's cooperation not contemplated by § 5K1.1 under the grant of discretion to sentencing judges embodied in § 5K2.0. He urges us to follow the Second Circuit's decision in *United States v. Kaye*, 140 F.3d 86 (2d Cir. 1998), in which the court limited § 5K1.1's application to cooperation with federal authorities. The defendant says that his cooperation was directed to state and local authorities and thus outside the scope, and limitation, of § 5K1.1.

In *Kaye*, the defendant appealed his sentence alleging that the sentencing judge erred in failing to recognize that he had discretion to grant a downward departure without a motion to do so by the government where the defendant provided, and the government acknowledged, substantial assistance to local authorities in the prosecution of others. After noting that the language in § 5K1.1 and the Commentary does not explicitly state whether "assistance" refers to cooperation with "both federal and local authorities or to federal authorities alone," 140 F.3d at 87, the court held that "the term 'offense' in Section 5K1.1 is properly interpreted to refer only to federal offenses and that Section 5K1.1 addresses assistance only to federal authorities." *Id*. The sentencing court thus had discretion under 5K2.0 to decide the defendant's downward departure motion based on his cooperation with local authorities. *Id*. at 88-89.

*Kaye*, however, represents only one side of a split in the circuits on the question of whether the substantial assistance mentioned in § 5K1.1 is limited to federal authorities. The Third Circuit rejected this same argument in *United States v. Love*, 985 F.2d 732 (3d Cir. 1993), where the defendant contended that he was entitled to consideration of a downward departure even in the absence of a government motion on the basis of substantial assistance he provided to the Commonwealth of Pennsylvania in the prosecution of others. The Court stated that "[t]here is no indication in the language of § 5K1.1 or in the accompanying commentary that the Commission meant to limit 'assistance to authorities' to assistance to *federal* authorities." *Id.* at 734 (emphasis in original). *See also United States v. Egan*, 966 F.2d 328 (7th Cir. 1992); *United States v. Hill*, 911 F.2d 129 (8th Cir. 1990), *vacated on other grounds*, 501 U.S. 1226 (1991); *United States v. Lewis*, 896 F.2d 246 (7th Cir. 1990).

We need not decide this issue nor weigh in on the circuit division in order to resolve this appeal. Rather, we take our guidance from the plain language of the Guideline Section at issue and the statute on which it is based. U.S.S.G. § 5K1.1 traces its roots to 18 U.S.C. § 3553(e), which states:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance *in the investigation or prosecution of another person who has committed a crime.*

18 U.S.C. § 3553(e) (emphasis added). Section 5K1.1 states:

Upon motion of the government stating that the defendant has provided substantial assistance *in the investigation or prosecution of another person who has committed an offense*, the court may depart from the guidelines.