NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0131n.06

Case No. 20-1689

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Mar 15, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CORY KARL CADIEUX, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |

BEFORE: STRANCH, LARSEN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. When Cory Cadieux called the "Free Beer and Hot Wings" morning radio show shortly after pleading guilty to drug-trafficking charges, he said he was "just [a] weed man." (R. 173, Presentencing Report, PageID 330.) But in many ways Cadieux was also the model cooperative defendant. Just days after being charged, he told the government that he would cooperate with them. And he did just that by giving the government information, testifying before a grand jury, and pleading guilty at the earliest available opportunity.

Because he was so cooperative in so many ways, Cadieux now argues that the district court erred in calculating his guidelines range when it refused to grant a reduction for acceptance of responsibility and included an enhancement for obstruction of justice. But because Cadieux's conduct while out on bond supports the district court's decision, we **AFFIRM**.

I.

Cadieux was involved in a Michigan conspiracy to distribute marijuana in which he grew and then sold at least 100 pounds of processed marijuana over the course of two years to Andrew Bravo who then sold the drugs to others. Cadieux was arrested and charged in December 2019 for his role in this drug-trafficking conspiracy.

He was very cooperative in the case against him. Shortly after his arrest, he gave the government information and testified before a grand jury. And after the court released him on bond, Cadieux entered into a plea agreement and pled guilty to conspiracy to manufacture, distribute, and possess with intent to distribute 50 kilograms or more of marijuana.

While out on bond, however, Cadieux also made some poor choices. First, he violated his conditions of release when he ate a marijuana brownie, tested positive for marijuana three times, and took two Adderall pills prescribed to someone else. Second, he discussed details of his pending criminal investigation on a local radio show, "Free Beer and Hot Wings,"[1] after the hosts asked listeners about the easiest money they had ever made. Cadieux told the hosts that he had made about three million dollars in past three years growing and selling marijuana. He acknowledged that he was going to prison for it. But he said "it was worth it" because he was only going to prison for 15 to 24 months, and he could keep the money he made because he was "good at hiding" it. (R. 173, Presentencing Report, PageID 331.) He told them his plan was to "get out and do it again," but he said that the next time he was "gonna do it legally . . . but in [his] wife's name" because he couldn't "do it in [his] name no more." (First Call.) One of the hosts responded, "yeah, you'll be a felon . . . ." (*Id.*) Third, after realizing the call had been a mistake, Cadieux called again and asked the show to "dump a cup of coffee on the sound board and get rid of the

---

[1] *See* https://www.freebeerandhotwings.com/.

call" because the call had upset his attorney. (R. 185, Sentencing Hearing, PageID 597.) He offered to pay for a replacement.

After Cadieux's call to "Free Beer and Hot Wings," the government investigated Cadieux's concealment of drug money. It "identified significant sums of unexplained cash hid[den] in his bank accounts." (*Id.* at 602.) And Cadieux agreed to voluntarily forfeit $75,000, which the government believed more accurately represented his drug profits than Cadiux's statements on the air.

Considering Cadieux's behavior on bond, probation's presentence report (PSR) recommended an enhancement for obstruction of justice and refused to recommend a reduction for acceptance of responsibility. Cadieux objected, asserting that he was entitled to an acceptance-of-responsibility reduction and should not be saddled with an obstruction-of-justice enhancement. In response, the government disagreed with probation's recommendation to deny the responsibility-acceptance reduction, but it agreed with the recommendation to apply the obstruction-of-justice enhancement.

The sentencing court rejected both of Cadieux's objections, adopting the PSR's recommendations concerning acceptance of responsibility and obstruction of justice. It found that Cadieux was not entitled to the acceptance-of-responsibility reduction for two reasons: 1) Cadieux's statements on the radio show indicating his intent to "go right back to it" coupled with his attempts to destroy the recording and 2) Cadieux's continued drug use in violation of bond conditions. (*Id.* at 609-11.) It found the obstruction enhancement appropriate because "the phone calls were relevant for sentencing"; it was particularly troubled by "the request of the radio station to ditch the tape." (*Id.* at 610.) The court sentenced him to 37 months.

On appeal, Cadieux challenges the district court's denial of the acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1 and its application of the obstruction enhancement under U.S.S.G. § 3C1.1.

II.

There is no clear consensus in our cases about what standard of review applies in appeals challenging the application of either guideline. *United States v. Thomas*, 933 F.3d 605, 608-11 (6th Cir. 2019). Some of our cases say that de novo review applies, while others say that a more deferential standard does. *See id.* (providing a detailed description of the mixed signals embedded in our caselaw). Because Cadieux's arguments fail even under de novo review (the most favorable standard to him), we "leave resolution of the standard of review for another day." *Id.* at 610.

III.

Cadieux first argues that the district court erred in denying him an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1, which provides for a two or three level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." *Id.* Cadieux points to the many ways that he rapidly cooperated with the government after his arrest as evidence of his acceptance of responsibility, including giving information to the government, testifying before a grand jury, and pleading guilty. And he says that after release from jail he stopped growing marijuana and had no contact with Bravo.

Taken in isolation, this behavior no doubt supports Cadieux's contention that he was entitled to a § 3E1.1 reduction. Indeed, "[a]n acceptance of responsibility adjustment is generally awarded to a defendant who admits guilt at a timely-entered guilty plea proceeding." *United States v. Truman*, 304 F.3d 586, 592 (6th Cir. 2002); *see also* U.S.S.G. § 3E1.1, cmt. n.3 ("Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct

comprising the offense of conviction . . . will constitute significant evidence of acceptance of responsibility . . . .").[2] But Cadieux's focus on his actions consistent with acceptancy of responsibility minimizes his conduct that was not.

While conduct like pleading guilty early supports the adjustment, that conduct may be outweighed by "conduct clearly demonstrated in the record that is inconsistent with the defendant's specific acknowledgment of responsibility." *Truman*, 304 F.3d at 592. And that is the case here.

Although Cadieux cooperated with the government at virtually every turn leading up to his guilty plea, he also called into a radio show while out on bond and said that the prison sentence he expected "was worth it" because he was "good at hiding [his] money." (R. 173, Presentencing Report, PageID 331.) And he said he planned to "get out and do it again." (*Id.*) True, he said he would do it legally next time. (*Id.*) But immediately thereafter he said he would need to do it in his wife's name because he could not "do it in [his] name no more," presumably based on his understanding of the impact of his felony conviction on his ability to do so and belying his assertion that his future conduct would be lawful. (First Call.) Making matters worse, he later called again and asked the show to delete the previous call by having the DJ spill coffee on the soundboard. He also violated his conditions of release when he ate a marijuana brownie, tested positive for marijuana three times, and took two Adderall pills prescribed to someone else.

This conduct undercuts Cadieux's claim for the reduction. In *United States v. Castillo-Garcia*, we held that "[l]ack of true remorse is a valid consideration under § 3E1.1." 205 F.3d 887, 889 (6th Cir. 2000); *see also United States v. Morrison*, 983 F.2d 730, 735 (6th Cir. 1993) ("[T]rue remorse for specific criminal behavior is the issue."). And Cadieux's statements on the

---

[2] It bears repeating that guideline "[c]ommentary binds courts only 'if the guideline which the commentary interprets will bear the construction.'" *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (quoting *Stinson v. United States*, 508 U.S. 36, 46 (1993)).

air evince a "[l]ack of true remorse." *Castillo-Garcia*, 205 F.3d at 889. Not only did he say that committing the crime "was worth it" because he had made millions, he also said he wanted to produce and distribute marijuana again.[3] (R. 173, Presentencing Report, PageID 331.) These statements are inconsistent with remorse and thus acceptance of responsibility.

Even assuming that the initial call to the radio station is not enough in isolation to justify withholding the reduction, his attempt to cover up his imprudent call also supports the district court's decision. Because of the call, the government began to investigate possible concealment of drug proceeds, and Cadieux ultimately agreed to forfeit $75,000. The call viewed along with the financial investigation and forfeiture suggests that Cadieux may not have been completely forthright before the call, realized that, and desired to keep bad information off the government's radar. Minimization like this appears to be, at the very least, inconsistent with acceptance of responsibility. *See* U.S.S.G. 3E1.1, cmt. n.3 (noting that "truthfully admitting the conduct comprising the offense of conviction" supports the reduction). Furthermore, the application notes to the guidelines explain that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. 3E1.1, cmt. n.4. And as explained below in Part IV, Cadieux's second call to the radio show triggers the § 3C1.1 enhancement.

---

[3] That Cadieux stated that he intended to distribute legally in the future does not greatly help his cause. First, distribution of marijuana remains a felony under federal law. *See* 21 U.S.C. § 841(a)(1). Next, immediately after saying that he intended to distribute legally, he said he would set up a marijuana operation in his wife's name presumably based on his belief about his felony's impact on his ability to distribute marijuana under state law. And this suggests that he planned to break both state and federal law again. Moreover, in *Castillo-Garcia*, we upheld a district court's decision in a similar case where the defendant who was being deported stated that he intended to return after deportation even though the defendant also stated, "[a]fter a pause, . . . that he would try to get permission" first. 205 F.3d at 889 n.2. And regardless of his future intentions, the statement that his crime was "worth it" because of massive financial gains is the opposite of remorse and is likely enough to support the district court's decision in isolation. (First Call.)

But wait, there is even more. Assuming all the above is insufficient, Cadieux's drug use out on bond also supports the district court's decision. The guideline notes state that "voluntary termination or withdrawal from criminal conduct or associations" is an "appropriate consideration[]" in determining acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. n.1(B). Relying on this language, we have explained that persisting in "related" criminal conduct is inconsistent with the § 3E1.1 reduction. *Morrison*, 983 F.2d at 734-35. And "where a defendant is convicted of a crime involving drugs, such as conspiracy to distribute, and later tests positive for use of that drug while on bond, we have found the offense of conviction and post-plea conduct sufficiently related to deny the acceptance-of-responsibility reduction." *United States v. Searer*, 636 F. App'x 258, 260 (6th Cir. 2016); *see also United States v. Walker*, 182 F.3d 485, 489 (6th Cir. 1999) (holding that "the district court properly found that Walker failed to accept responsibility for his criminal conduct (i.e., conspiracy to distribute cocaine)" given his cocaine use on bond). Cadieux tested positive three times for marijuana, ate a marijuana brownie, and took two Adderall pills prescribed to someone else while out on bond. This related criminal conduct cuts against his acceptance of responsibility.

The district court got it right. The evidence of acceptance of responsibility is outweighed by Cadieux's inconsistent conduct while out on bond.[4]

---

[4] Two of Cadieux's acceptance-of-responsibility arguments remain unaddressed. First, in his reply brief he argues that his plea agreement did not abrogate his freedom of speech and that his speech, imprudent as it may have been, is "too ephemeral to support a *factual finding*" that he did not accept responsibility. Cadieux forfeited this argument by raising it for the first time in his reply. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an 'argument' as 'forfeited when it was not raised in the opening brief.'" (citations omitted)).

Second, he argues that we should ignore the government's arguments on appeal because the government took a contrary position below. Fair enough. Waiver bars litigants from taking contrary positions on appeal. *See Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) (explaining a party "waives an argument by, for instance, . . . stating that a proposition is not

IV.

Cadieux next argues that the district court erroneously applied the obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 based on his second call. Section 3C1.1 calls for a two-level enhancement if the defendant "attempted to obstruct or impede[] the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." The guideline notes provide a non-exhaustive list of examples that includes "directing or procuring another person to destroy or conceal evidence that is material to . . . [a] judicial proceeding . . . or attempting to do so." *Id.*, cmt. n.4(D). The notes define material evidence as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." *Id.*, cmt. n.6. So in the sentencing context, that means that evidence is material if it would "'tend to influence or affect' a sentencing decision (such as the proper prison term)." *Thomas*, 933 F.3d at 610 (quoting U.S.S.G. § 3C1.1, cmt. n.6).

Cadieux's second call fits squarely within § 3C1.1. First, the statements on the first call were material to sentencing. As explained above, when Cadieux first called "Free Beer and Hot Wings," he made statements wildly inconsistent with acceptance of responsibility by stating that his federal charge and likely sentence were "worth it" because he was "good at hiding" his money. (R. 173, Presentencing Report, PageID 331.) Those statements were material to sentencing—an important "issue under determination" at the time of the call under U.S.S.G. § 3C1.1, cmt. n.6— because they undercut his entitlement to a three-level reduction. Indeed, the statements did

---

disputed, or stating that they are not pressing an argument" (citation omitted)). But even if some form of that argument could restrict the government here that does not mean that Cadieux simply wins. He is appealing a district court's sentencing decision, and we must review that decision on appeal, not the government's arguments below. And we hold that the district court made the right decision on acceptance of responsibility for the reasons explained above.

partially influence sentencing when the court overruled Cadieux's acceptance-of-responsibility objection. So contrary to Cadieux's argument, the phone conversations were important to and did affect the offense-level calculation. The statements were also relevant to considerations under 18 U.S.C. § 3553. For example, even though some statements were likely exaggerated, the initial call shed additional light on "the nature and circumstances" and "seriousness of the offense" by showing that Cadieux may have concealed drug proceeds. *Id.* § 3553(a). And Cadieux's bragging was relevant to crafting a sentence that would "afford adequate deterrence to criminal conduct" and the need "protect the public from further crimes of the defendant." *Id.*

So Cadieux "attempted to obstruct or impede[] the administration of justice with respect to . . . sentencing" when he tried to have evidence "related to . . . relevant conduct" destroyed. U.S.S.G. § 3C1.1. Contrary to Cadieux's argument, § 3C1.1 does not require "conduct directly related to information provided to any person serving in an official capacity." (Appellant Br. at 25.) Indeed, his actions closely track an example of conduct triggering the enhancement provided in the guideline notes; his second call was an "attempt[]" to "direct[] . . . another person to destroy or conceal evidence material to . . . [a] judicial proceeding." U.S.S.G. § 3C1.1, cmt. n.4(D). And Cadieux's argument that the enhancement was improper because his request was a "not an actual attempt at all"—because spilling coffee on a soundboard could not destroy a recording—is not well taken. (Appellant Br. at 26.) Section 3C1.1. does not limit its reach to skilled attempts at obstruction.

V

Because Cadieux is not entitled to the acceptance-of-responsibility reduction and the district court correctly applied the obstruction enhancement, we **AFFIRM**.