[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15099

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 20, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:10-cr-20152-DMM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE L. COLON,

Defendant-Appellant.

_____

No. 10-15212

_____

D.C. Docket No. 1:10-cr-20152-DMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS CANO,

                                        Defendant-Appellant.

_____

No. 10-15303
_____

D.C. Docket No. 1:10-cr-20152-DMM-3

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

ROBYN L. COLON,

                                        Defendant-Appellant.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 20, 2012)

Before DUBINA, Chief Judge, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

    Appellants Jose L. Colon, Robyn L. Colon, and Carlos Cano appeal their

convictions for conspiracy to commit bank fraud under 18 U.S.C. § 1349 and for

substantive bank fraud under 18 U.S.C. § 1344(1) and (2). Each Appellant

2

contends, *inter alia*, that the district court erred at trial in sustaining Maria

Lozada's invocation of her privilege against self-incrimination, and similarly, in

denying the Appellants' request that the court compel Lozada to appear as the

court's witness. Carlos further argues that the court abused its discretion by

allowing the government to impeach his testimony with his 12-year-old conviction

for writing bad checks.[1]

## I. BACKGROUND

In September 2006, Carlos Cano met Maria Lozada. Lozada, who worked

for an attorney, asked Carlos to allow her to use his identity and credit history to

purchase properties that they could "flip" for a higher resale price. Lozada offered

him $5,000 up front for the use of his credit, in addition to a portion of future

resale profits. Carlos gave Lozada his social security card, a copy of his driver's

license, as well as bank account statements. Lozada completed loan applications

and other documents in Carlos's name using false information concerning Carlos's

intent to occupy the homes as his primary residence, his employment status, as well

as his monthly income. Carlos signed many documents at Lozada's direction

---

[1] Additionally, Robyn challenges the court's refusal to give a missing witness instruction concerning Lozada. Robyn further argues that the jury instructions constructively amended the indictment. Jose challenges the court's denial of his Rule 29 motions; alternatively, he adopts Robyn's arguments. Carlos alleges cumulative trial error as well as error at sentencing in the calculation of fraud loss and the imposition of the forfeiture judgment against him.

3

without reading anything contained within. In some instances, Lozada signed or initialed documents on his behalf.

Carlos introduced Lozada to his co-worker, Robyn Colon. Lozada offered to pay Robyn $5,000 each time Lozada used Robyn's identity and credit for an investor to purchase real estate. Lozada told Robyn that the investor –not Robyn– would actually make mortgage payments. Robyn and her husband, Jose, gave their personal information to Lozada who applied for loans on behalf of the Colons using false income and employment information. Additionally, many of the Colons' mortgage applications falsely stated that the properties were for their primary, personal residence. Like Carlos, the Colons did not read any documents that they signed, and sometimes Lozada signed or initialed documents on behalf of the Colons. Neither Robyn nor Jose ever saw the properties purchased in their names or learned anything about the actual investors.

Eventually, the investors stopped making loan payments as real estate market conditions declined. Of course, the banks pursued the Appellants. When Robyn and Jose sought Lozada's assistance, she would not respond to them. The Colons, understanding that they could be held criminally liable, voluntarily told government agents about their participation in the scheme. The Secret Service eventually opened an investigation, and in March 2010, Lozada, the Colons, and

4

Carlos were indicted for one count of conspiracy to commit bank fraud as well as numerous counts of substantive bank fraud.

Lozada cooperated with the prosecutors and entered a plea agreement on June 15, 2010. Around the same time, the government gave defense counsel a report of an interview with Lozada which stated that Lozada admitted to initialing and signing some of the mortgage documents using Robyn's name. At the July 2010 trial, the Government chose not to call Lozada to testify. The Appellants then wished to call Lozada as a defense witness, hoping that Lozada would testify that she signed many of the documents without the Appellants' knowledge or consent and that she never told the Appellants that the transactions were illegal. Lozada's attorney, however, informed the Appellants' attorneys that Lozada, who had not yet been sentenced, intended to invoke her Fifth Amendment right against self-incrimination if called as a defense witness. Thus, the Appellants never called Lozada. The district court denied the Appellants' request that the court order Lozada to testify as the court's witness, citing both Lozada's established privilege against self-incrimination prior to sentencing as well as the coercive effect that the court's order might have on Lozada.

While Jose chose not to testify, Robyn and Carlos both testified in their own defense. Each of them acknowledged some signatures among the mortgage and

loan documents as their own, while they denied signing other documents. Each of them further testified that they believed that their participation in the purchase of the properties was legitimate and legal. Prior to trial, the Government provided written notice of its intent to use Carlos's 1998 conviction for passing bad checks if Carlos testified in his defense at trial. The court overruled Carlos's objection to the admission of the 1998 conviction. Consequently, when Carlos testified, he admitted on direct examination that he pled guilty to passing bad checks in 1998.

The jury found each Appellant guilty of conspiracy to commit bank fraud and at least one substantive bank fraud charge.

## II. DISCUSSION

After carefully considering all of the arguments, we summarily affirm the convictions of each Appellant, but we specifically address two arguments that warrant discussion.

### A. *Lozada's invocation of her Fifth Amendment privilege*

The Appellants collectively argue that the district court should have compelled Lozada to testify as either a defense or court witness because she received immunity for her cooperation with the government, and thus had no right to refuse to testify. The Appellants posit that if Lozada had testified, she would have bolstered their defense of good faith, and therefore, her refusal to testify

violated their Sixth Amendment right to compulsory process, as well as their Fifth Amendment right to present a complete defense.

We review *de novo* a district court's ruling on the invocation of privilege against self-incrimination. *United States v. Hernandez*, 141 F.3d 1042, 1049 (11th Cir. 1998). In the present case, the Appellants argue Lozada understood that as part of her cooperation with the Government and in exchange for a more favorable sentence, the court could compel her to testify as a government witness notwithstanding her privilege against self-incrimination. Because a court can compel a cooperating criminal to testify for the government in exchange for immunity (*see Kastigar v. United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 1661 (1972)), the Appellants argue that they also had a right to ask the court to compel testimony from their co-defendant. While the Appellants allege that Lozada entered into an immunity agreement with the Government, this agreement was not admitted into the court's record. Nevertheless, the Appellants insist that any incriminating testimony elicited from Lozada would have already been known to the Government, and so Lozada would not have been subjected to any hazard of self-incrimination.

However, at the time of the trial, Lozada had only entered into a plea agreement; she had not been sentenced yet. We have held, and the Supreme Court

7

has agreed, that a criminal defendant absolutely maintains her right to assert the privilege against self-incrimination after entering into a plea agreement but prior to sentencing. *Mitchell v. United States*, 526 U.S. 314, 321, 119 S. Ct. 1307, 1311 (1999); *United States v. Kuku*, 129 F.3d 1435, 1438 (11th 1997) (per curiam) (reasoning that compelled testimony could possibly impact a defendant's "as yet undetermined sentence"). Thus, Lozada maintained her right to invoke her privilege against self-incrimination until her "sentence [was] fixed and the judgment of conviction [became] final." *Mitchell*, 526 U.S. at 326, 119 S. Ct. at 1314. Lozada's privilege existed at the time of the Appellants' trial in spite of any governmental grant of immunity alleged to exist in this case.

Alternatively, even if the district court erred in its ruling concerning Lozada's Fifth Amendment rights, the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967). The Appellants' argument that their own testimony was inadequate is unpersuasive. Any testimony that the Appellants hoped to elicit from Lozada was admitted or could have been admitted through the Appellants' own testimony concerning what documents they did and did not sign, as well as what Lozada communicated to them, and how those communications affected their state of mind (*i.e.*, their criminal intent). Accordingly, we conclude that the district court

8

committed no error in sustaining Lozada's invocation of her privilege against self-incrimination and in denying Appellants' request that the court compel her to appear as the court's witness.

*B. Carlos's prior conviction and impeachment under Rule 609(b)*

Carlos argues that he was unfairly prejudiced by the admission of his 12-year-old conviction for passing bad checks. We review the district court's decision to admit evidence of prior convictions under Federal Rule of Evidence 609 for abuse of discretion. *United States v. Pritchard,* 973 F.2d 905, 908 (11th Cir. 1992). Rule 609(a)(1)(B) requires that evidence of a felony criminal conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Rule 609(b) limits admission of a conviction "if more than [ten] years have passed since the witness's conviction or release from confinement for it, whichever is later." If the conviction is more than ten years old, then it is admissible only if its probative value substantially outweighs its prejudicial effect, and the proponent gives the adverse party written notice of the intent to admit the conviction so that the adverse party has an opportunity to contest admission. *Id.*

Carlos's 1998 conviction carried a ten-year suspended sentence that lasted until 2008. A suspended sentence is effectively a form of probation, as the felon is

not incarcerated unless he commits another crime or violates a court-imposed condition. *See* BLACKS LAW DICTIONARY (9th ed. 2009). At least one circuit has held that a period of probation or parole constitutes "confinement" under Rule 609(b). *See United States v. Gaines*, 105 F. App'x 682, 695 (6th Cir. 2004), *vacated on other grounds by Gaines v. United States*, 543 U.S. 1114, 125 S. Ct. 1090 (2005). However, other circuits have reached the opposite result. *See United States v. Rogers*, 542 F.3d 197, 198 (7th Cir. 2008); *United States v. Daniel*, 957 F.2d 162, 168 (5th Cir. 1992) (per curiam). We have apparently not taken a position on this question. However, this case does not require us to do so, because Carlos's 1998 conviction was relevant, probative, and not unfairly prejudicial.

In determining whether to admit a conviction under Rule 609(b), we consider the impeachment value of the prior conviction, the passage of time and the witness's conduct since the conviction, the similarity between the convicted conduct and the charged crime, the importance of the witness's testimony, and the centrality of the witness's credibility. *Pritchard*, 973 F.2d at 908–09. In Carlos's case, he put his criminal intent in issue, testifying that he did not intend to participate in illegal activity. Carlos's bad check conviction involved a similar *mens rea,* intent to defraud, as the bank fraud and conspiracy charges. Furthermore, the convicted conduct and the charged bank fraud offense both

10

involved Carlos's signature on documents by which he misrepresented his ability to meet his financial obligations. Moreover, the Government had a strong case against Carlos for bank fraud, but only circumstantial evidence of his criminal intent. For all of these reasons, the Government's admission of the prior conviction was necessary to impeach Carlos and was not unfairly prejudicial. Thus, we conclude that the district court did not abuse its discretion in allowing the Government to admit the 12-year-old conviction pursuant to Federal Rule of Evidence 609(b).

## III. CONCLUSION

For the foregoing reasons, we affirm the Appellants' conspiracy and bank fraud convictions

AFFIRMED.